## 9303

### MURRAY v. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY.

(88 S. E. 31.)

1. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL FOR AGENT'S TORTS.—A principal is responsible for the tort of his agent, if the agent was acting about the principal's business, and the wrongful act was incidental to the performance of that business, even though it was done in violation of the principal's wish and direction.

2. TELEGRAPHS AND TELEPHONES—CONNECTING LINES—TORTS OF AGENT.—The defendant telephone company was under a reciprocal arrangement with a local telephone company whereby the defendant's lines ran through the local exchange at B. Defendant had no operator at B., the work there being done by the operator of the local company. There was no relay station at B., the operator having no duties to perform as to messages passing through, although he had a bell which notified him of all long distance calls, and by putting in a plug and pulling a key back he could cut in on the line. The employee of the local company interrupted the plaintiff's conversation and used

offensive language to the lady with whom he was talking. *Held,* that the local operator was not the defendant's agent when he committed the act in question, and defendant was not liable.

Before PRINCE, J., St. George, October, 1915. Affirmed.

Action by Joseph Murray against the Southern Bell Telephone & Telegraph Company. From a verdict for defendant, the plaintiff appeals. Affirmed.

*Messrs. J. P. K. Bryan, R. L. Weeks* and *Wolfe & Berry,* for appellant. The latter submits: *Agency may be shown by parol:* 74 S. C. 225; 3 Elliott Ev. 1629, 1638; 76 S. C. 531; 80 S. C. 211. *Master liable for wilful acts of servant:* 67 S. C. 395; 3 S. C. 1, 8; 56 S. C. 126; 57 S. C. 347. *Scope of agency:* 82 S. C. 467; 37 S. C. 381; 125 S. W. 441. *Telephone company common carrier:* 61 S. C. 83; 69 S. C. 434 and 443; 64 S. C. 242. *Damages:* 70 S. C. 418; 86 S. C. 242; 90 S. C. 540, 541. *Punitive damages:* 94 S. C. 282; 76 S. C. 248.

*Mr. W. Huger Fitzsimons,* for respondent, submits: *That when there is only one reasonable inference to be drawn from the testimony it is the duty of the Circuit Judge to direct a verdict:* 101 S. C. 287; 101 S. C. 373; 99 S. C. 335; 97 S. C. 52; 91 S. C. 17. *There is total absence of testimony that the wrong complained of was the act of an agent of defendant. Indeed, plaintiff's own testimony is that it was not. The undisputed evidence is that the wrongful act was committed in the office of the independent Branchville company by some one using the apparatus of that company with and over which office and apparatus defendant had no control or connection whatever other than that of a connecting carrier, and then only for messages to and from Branchville:* 21 S. C. 35; 19 S. C. 353; 43 S. C. 461; 80 S. C. 139; 83 S. C. 318; 89 S. C. 129; 104 U. S. 146. *Even in contracts for through carriage the initial company*

*can lawfully restrict its liability to its own line:* 62 S. C.
414; 75 S. C. 324; 155 U. S. 333; 107 U. S. 102; 191 U. S.
477; 78 S. C. 42; Civil Code, sec. 2574.    *There is no lia-
bility because the evidence shows the wrong complained of
was the wrongful act of a third person, without the knowl-
edge on the part of the defendant of any danger of such
act or of any facts or circumstances from which such danger
could have been reasonably anticipated:* 77 S. C. 434; 78
S. C. 552; 84 S. C. 15; 74 S. C. 434.

*Messrs. Smythe & Visanska,* also for respondent, submit:
*Master not liable for act of servant outside of scope of
employment:* 92 S. C. 42; 5 Rich. L. 27; 13 S. C. 17; 17
Mass. 478; 37 S. C. 194; 38 S. C. 29; 58 S. C. 532; 63
S. C. 46; 72 S. C. 205; 58 S. C. 143; 67 S. C. 391.    *Act
outside of scope:* 37 S. C. 379; 77 S. C. 549; 99 S. C. 428;
65 S. E. 322; 24 S. W. 737; 10 L. R. A. (N. S.) 367, 396;
56 N. E. 604; 15 L. R. A. 475; 38 N. E. 498; 43 N. E. 100;
26 N. E. 446; 17 N. W. 952; 2 N. E. 101; 21 S. E. 288;
76 N. E. 1058; 141 N. W. 430; 82 Atl. 392; 125 S. W.
441; 28 So. 823; 49 Atl. 938; 63 S. W. 1076; 116 S. W. 89.

March 3, 1916.

The opinion of the Court was delivered by MR. JUSTICE
GAGE.

This is a case at law, and there is only one issue made by
one exception.    The plaintiff sued for a tort, and the Court
directed the jury to find a verdict for the defendant, at
which the plaintiff appeals.

These are the plainly proven facts: That the plaintiff was
at St. George and called a lady at Columbia.    That there is
at St. George only one telephone company, the Bell, and it
maintains an exchange and an operator at that point.    That
the alleged tort was committed at Branchville, a town on
the defendant's line betwixt St. George and Columbia.
That the base or "central" of the defendant's operations in

that vicinity is Denmark. That there is at Branchville a telephone company, owned and operated exclusively by the citizens of that town, with lines in the town and into the country round about. That the defendant, which we shall refer to as the Bell Company, owns and operates, besides local lines and exchanges, what is called a long distance line, which ramifies the South and maybe the Union; and its line in issue ran through St. George, Branchville, Denmark and Columbia. That the Branchville Telephone Company and the Bell Company had a contract by which the Bell Company was let into the switchboard of the Branchville Company, and for this connection the Bell Company paid the Branchville Company 15 per cent. of all messages that originated at the Branchville exchange, and went from thence over the Bell lines. That the Bell Company agreed to transmit messages over its lines which came off the Branchville line; and the Branchville Company agreed to transmit over its line messages which came off the Bell line, each company to pay the other so much. That the Bell line ran within 20 feet of the Branchville central, and a wire ran from off the Bell line into the Branchville central, which by some manipulation of the operator at Branchville, connected the two systems. That the Bell Company had no exchange or operator at Branchville, unless the tort-feasor in the instant case was its operator, which is the question to be decided. That the procedure in the instant case, where a person at St. George would talk with a person at Columbia, is this: The operator at St. George would by two rings signal Denmark, betwixt which St. George and Branchville lay, and Denmark would get Columbia and join the terminal; but in signaling Denmark from St. George, and in talking from St. George to Columbia, the sound passed through Branchville, and by the intervention of a human agency at Branchville might be heard there. Such an event is thus described by a witness:

"Q. At that time there were two wires passing through there? A. There were three circuits passing through. Q. Tell us whether if a person was talking from St. George to Denmark you could hear in your exchange there. A. Not unless you put the plug in and opened the key; that wire was not connected up so you could hear anything, unless you put the plug in the No. 1 drop. Any person could have put that plug in. Q. When the operator at St. George would ring Denmark, you would hear it in the office at Branchville? A. Yes, sir; you could hear it on an extension bell in our office; an extension bell that was on the wall there. Q. All you had to do, then, was to put the plug in and go to work? A. Yes, sir; put the plug in and take up the receiver and throw the switch. Q. Don't the operators keep the receivers on? A. I think the Bell operators do when they are busy, but ours do not. Q. By putting the plug in and putting the receiver on they could hear? A. Yes, sir. Q. Would your operator at Branchville necessarily have anything to do with a message that was being transmitted from St. George to Columbia? A. No, sir; not a thing; the operators all along the line would have to call Denmark and let them keep a record of the message before they could use the line. Q. There was no relay station at Branchville at all? A. No, sir. Q. Could the operator at Branchville hear what they had to say? A. You could hear when they were on that line; you could hear between New York and Jacksonville. Q. You could talk into that line if you wanted to? A. Yes, sir; you could talk into it. Q. What was necessary for him to do to get connection with that line? A. He would have to pick up the receiver and put in the plug and pull the key back. It was not connected so you could hear until you did that. The line passed through the office, and the extension bell was the only signal for the operator to come in on the line."

In the instant case the thing here described was done by a lad at the Branchville exchange, some 12 or 14 years old,

named McDuffy, and son of the operator there. That is
to say, when Denmark was signaled from St. George an
extension bell on the wall at Branchville rang, but not the
signal for Branchville; McDuffy then put in the plug, pulled
the key back, and picked up the receiver. In the language
of the shop, that "put him on the line," and while thus on
the line he used offensive words to the lady at Columbia
terminus; and they constitute the alleged tort.

The Circuit Court thus admirably stated the facts, and
the Court's conclusion of law thereupon:

"I hold that there is testimony, some testimony to show
that the Branchville agency of the local company at Branch-
ville was for the purpose of receiving and transmitting all
long distance messages from Branchville to other points.
Columbia, for instance, and from Columbia to Branchville,
or from any other point to Branchville or from Branchville
—that this local company at Branchville was for the purpose
of handling and transmitting and receiving such long dis-
tance messages the agent of the defendant company. I hold
that the testimony shows that they were not the agent of the
defendant company for any other purpose. I hold that
the testimony shows conclusively that they had no duty to
perform in connection with a message from St. George to
Denmark or Columbia, and I hold therefore that neither the
Branchville exchange or its employees, so far as concerned
the message from St. George to Columbia, was in any sense
the agent of the defendant company. I hold that the
defendant company is not responsible in this case because
the testimony tends to show that the employee of the local
company at Branchville interrupted the message, a message
from St. George to Columbia, in which the exchange at
Branchville had no duty to perform, and it therefore was
not the agent of the defendant company in reference to
that message."

The Court concluded, and we conclude, that the lad,
McDuffy, was the employee of the Branchville Company

about the business of the company; and it was and is con-. cluded that, for certain purposes, the Branchville Company was the agent of the Bell Company.

The vital issue is this: Was the Branchville Company, acting by McDuffy, in the performance of its business at all when it heard the bell ring on the wall, which was not a call to it, but a call to Denmark, and then put in the plug, pulled the key back, picked up the receiver and went on the line? To determine that issue no new principle of law is required; the difficulty, if any, lies in the application of old principles of law to those agencies which were utterly unknown when the old principles were established.   There is, and can be, no pretense that the Branchville Company represented the Bell Company in aught except the receipt and delivery of long distance messages at Branchville, or the transmissions of long distance messages from Branchville.   The testimony shows that, and that only.   About these matters each company was the representative of the other.   About all other matters, there was no relationship of agency or business betwixt the parties.   The Branchville Company had nothing to do with the message which passed along the wire by Branchville from those points south of Branchville to those points west of Branchville.   The getting on the line with them was a violation of any duty it owed to the Bell Company.

It is true that a principal is held to be responsible for the tort of an agent, even though the agent's wrongful act was done in violation of the principal's wish and direction. Indeed, it may be assumed, that in most instances agents who commit wrongs to third persons go counter to the wish of their principal.   But the liability in such cases as in all cases, only exists when the agent was acting about the principal's business; and the wrongful act was incident to the performance of that business.   That is the old rule, *"Qui facit per alium facit per se."*   The books say the agent must have acted within the scope of his

authority, or in the course of his employment, in order that the principal shall respond therefor.

What is the scope of the agency is fixed by the testimony, and by the law relevant to the testimony. The testimony in the instant case is all one way; it proves that the only business the Branchville Company had with the Bell Company was to receive messages off the Bell wire which might come to that town, and to send messages over the Bell wire which might be offered it at that town. The act of the agent in the instant case was neither of those; it was outside of those; it was not incident to those; it was therefore, the law declares, not within the scope of the employment.

The working arrangement betwixt the two companies, before set out, was made for the convenience of the public, at Branchville and at long distance points; and each company ought to be held liable for the wrongful performance of its part of the agreement, and for that only.

There would be no shadow of warrant to hold the Branchville Company liable for torts of the Bell Company on the long distance line at Denmark. Neither is there any warrant to hold the Bell Company liable for the torts of the Branchville Company done on its own premises at Branchville, and having no connection with the agency of the Branchville Company. Yet each is the agent of the other for the certain purposes before adverted to. We think the cases cited by the appellant do not touch this case.

There is no conflict about what the law is, but about its application to the facts of the case in hand. We have therefore not referred to other cases; that would muddle, rather than clarify, the question.

We are of the opinion that the judgment below must be affirmed; it is so ordered.